# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Idonna Jean Miller, | Case No. 11-cv-2063 (SRN/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Northwest Airlines, Inc.; Delta Air Lines, Inc. as Successor in Interest; Kathleen A. Swanson; Pamela M. Hegstrom; Chris E. Talbert; and Francelle L. Slocum, | |
| Defendants. | |

Idonna Jean Miller, 3260 Valley Ridge Dr., Eagan, MN 55122, pro se Plaintiff.

Gregory J. Stenmoe and Britt M. Gilbertson, Briggs and Morgan, P.A., 2200 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, on behalf of Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the undersigned United States District Court Judge for consideration of Plaintiff Idonna Miller's Objections [Doc. No. 124] to United States Chief Magistrate Judge Arthur J. Boylan's August 19, 2013, Report and Recommendation ("R & R") [Doc. No. 115]. The Chief Magistrate Judge recommended that Defendants' Motion for Summary Judgment [Doc. No. 95] be granted and Plaintiff's claims be dismissed with prejudice. (Report and Recommendation dated August 19, 2013 ("R & R"), at 24 [Doc. No. 115].) For the reasons set forth below, Plaintiff's objections are overruled and the Court adopts the R & R.

# I.   BACKGROUND

The factual and procedural background of Plaintiff's case is well documented in the magistrate judge's R & R and is incorporated herein by reference.[1]  Briefly stated, Plaintiff commenced employment with Defendant Northwest Airlines, Inc. ("Northwest")[2] in February 1987.  (Miller Work History, Ex. 7 to Gilbertson Aff. [Doc. No. 98-1].)[3]  During the time period relevant to this litigation, Plaintiff held the position of Cargo Customer Service Representative.  (Miller Dep. at 77, Ex. 1 [Doc. No. 98-1].)  In that position, Plaintiff was responsible for taking and responding to phone calls from Cargo customers relating to shipping and tracking freight.  (Id. at 77, 79–80.)  Plaintiff's supervisors were Defendants Pamela Hegstrom and Chris Talbert, who were assistant managers in the Cargo Call Center.  (Hegstrom Dep. at 8, Ex. 2 [Doc. No. 98-1]; Talbert Dep. at 10, Ex. 3 [Doc. No. 98-1].)  Defendants Hegstrom and Talbert reported to the manager of the Cargo Call Center, Defendant Kathleen Swanson.  (Swanson Dep. at 8–9, Ex. 5 [Doc. No. 98-1].)  Defendant Francelle Slocum was a human resources manager who worked with the Cargo department.  (Slocum Dep. at 7-8, Ex. 6 [Doc. No. 98-1].)

## A.   Plaintiff's FMLA Requests

Plaintiff requested, and was approved for, leave pursuant to the Family and Medical Leave Act ("FMLA") on numerous occasions during her employment at Northwest,

---

[1]   The Court recites background facts only to the extent necessary to rule on Plaintiff's objections.

[2]   Northwest merged into Delta Air Lines, Inc., effective December 31, 2009. (Answer ¶ 8 [Doc. No. 25].)

[3]   Unless otherwise noted, references to exhibits refer to the Affidavit of Britt M. Gilbertson [Doc. No. 98].

including on at least eight occasions between 2004 and 2008.  (See Miller's FMLA Leave Documents, Exs. 10-12 [Doc. No. 98-2].)  Relevant to this lawsuit, however, are two instances in which Plaintiff requested, but was denied, FMLA leave.  The first request, which was assigned Case No. 511 by Northwest, related to a leg injury Plaintiff suffered in October 2007.  Northwest denied her request on November 6, 2007, because "medical certification was not adequate and/or does not support that the requested leave is FML-qualifying."  (Miller's FMLA Leave Documents re: Case Nos. 502, 505, 506, 507, 508, and 509, Ex. 10 [Doc. No. 98-2].)  Plaintiff was informed that the request was denied because she had not been absent for three days.  (Id.)

The second request, which was made in April 2008 and assigned Case No. 602, related to chronic muscle strain dating from an injury Plaintiff sustained in 1996.  (Miller's FMLA Leave Documents re: Case No. 602, Exs. 20-21 [Doc. Nos. 98-1 & 98-2].)  This request, like many of the previous requests that had been approved, was supported by medical certifications provided by Dr. Ronald Bateman.  (See Miller's FMLA Leave Documents re: Case Nos. 502, 505, 506, 507, 508, and 509, Ex. 10 [Doc. No. 98-2].) )  However, Northwest's Director of Labor Relations believed that Dr. Bateman's certification providing for Plaintiff's absence of up to twenty hours per week due to an inability to work conflicted with his statement that she could work full time.  (See Miller's FMLA Leave Documents re: Case No. 602, Exs. 20-21 [Doc. Nos. 98-1 & 98-2].)  Pursuant to Northwest's Family and Medical Leave Policy:

> Where the Company has reason to doubt the validity of the information provided on a medical certification, the Company may require that the employee . . . take part in a second opinion at the Company's expense. . . .

> Where the opinions of the employee's . . . health care provider and the
> Company's designated health care provider differ, the Company may require a
> third medical opinion, again at the Company's expense.

(Northwest's FML Policy, Ex. 9 [Doc. No. 98-2].)  Therefore, Northwest decided to seek a

second opinion regarding Case No. 602.  (Letter from C. Talbert to I. Miller, Ex. 23 [Doc.

No. 98-3].)  The doctor who provided the second opinion, Dr. Brad Helms, concluded that

Plaintiff's 1996 injury had resolved and that no additional treatment of any kind was

medically necessary.  (IME Report, Ex. 30 [Doc. No. 98-3].)  He also found that Plaintiff

had no physical limitations or restrictions on work duties.  (Id.)  After receiving this report,

Northwest denied Plaintiff's leave request.  (See Letter from C. Talbert to I. Miller, Ex. 32

[Doc. No. 98-3]; Email Exchange between K. Swanson & H. Taylor, Ex. 33 [Doc. No. 98-

3].)  Northwest then provided Plaintiff with a letter explaining that her request was denied

based on the information provided by Dr. Helms, which "d[id] not support leave due to a

serious health condition."  (Letter from K. Swanson to I. Miller attaching FMLA Denial, Ex.

34 [Doc. No. 98-3].)

### B.    Plaintiff's Non-Work-Related Activities

In addition to her employment at Northwest, Plaintiff also worked as an independent

demonstrator for Stampin' Up, a home-based business that sells materials used to create

homemade greeting cards and scrapbooks.  (Miller Dep. at 45–47, Ex. 1 [Doc. No. 98-1];

Stampin' Up Documents, Ex. 18 [Doc. No. 98-2].)  Beginning in April 2007, Plaintiff used

Northwest company property and time to conduct business related to Stampin' Up.  For

example, Plaintiff used company printers to print order forms and other materials for

Stampin' Up, (see Hegstrom Dep. at 128–29, Ex. 2 [Doc. No. 98-1]; Talbert Dep. at 150–51,

4

Ex. 3 [Doc. No. 98-1]; Email from P. Hegstrom to K. Swanson, Ex. 15 [Doc. No. 98-2]); she discussed Stampin' Up with a Northwest customer and solicited the customer's email address in order to send her additional information, (see Hegstrom Dep. at 95, Ex. 2 [Doc. No. 98-1]; Email from P. Hegstrom to I. Miller, Ex. 17 [Doc. No. 98-2]); and she used her pass travel benefits to fly to Michigan on a trip during which Northwest believed she conducted a Stampin' Up camp as advertised on one of Plaintiff's flyers, (see Email from C. Talbert to F. Slocum & B. Sagnes, Ex. 29 [Doc. No. 98-3]).  Defendants Hegstrom and Talbert reminded Plaintiff multiple times in 2007 and 2008 that she should not be conducting these activities during work hours and that these activities were in violation of company policy.  (See Talbert Dep. at 97–99, 152, Ex. 3 [Doc. No. 98-3]; Email from P. Hegstrom to K. Swanson, Ex.15 [Doc. No. 98-2]; Email from P. Hegstrom to I. Miller, Ex. 17; Email from B. Sagnes to I. Miller, Ex. 28 [Doc. No. 98-3]; Email from C. Talbert to F. Slocum & B. Sagnes, Ex. 29 [Doc. No. 98-3].)

### C.    Plaintiff's Q & A Sessions and Termination of Employment

Based on evidence that Plaintiff was conducing non-work-related activities during work hours, Northwest's Director of Labor Relations suggested conducting a "Q & A session" with Plaintiff.  (See Email from F. Slocum to M. Cvengros, Ex. 35 [Doc. No. 98-3].)  During Q & A sessions, managers interview an employee to gather facts.  (Sagnes Dep. at 90, Ex. 4 [Doc. No. 98-1].)  Defendants Slocum and Swanson met with Plaintiff and a union representative on July 18, 2008.  (7/18/08 Q & A, Ex. 36 [Doc. No. 98-3].)  During the meeting, Plaintiff acknowledged that she had used her pass travel benefits to fly to Michigan and hold stamp camps in February, March, and June 2008.  (See Swanson Dep. at 230, Ex. 5

[Doc. No. 98-1]; 7/18/08 Q & A, Ex. 36 [Doc. No. 98-3].)  She also acknowledged using the company internet and printer for her Stampin' Up business.  (7/18/08 Q & A, Ex. 36 [Doc. No. 98-3].)  Finally, while some of the dates that Defendants Slocum and Swanson questioned Plaintiff about were incorrect, Plaintiff acknowledged using her pass travel benefits to fly on days following taking sick or FMLA leave.  (Id.)

At the end of the meeting, Plaintiff was suspended with pay.  (Swanson Dep. at 230-31, Ex. 5 [Doc. No. 98-1].)  Plaintiff then asked to return to her desk to complete her time sheet.  (Id.)  However, upon returning to her desk, Plaintiff forwarded a large number of company files to her personal email address.  (See Email from K. Swanson to F. Slocum & M. Cvengros, Ex. 38 [Doc. No. 98-4]; Email from F. Slocum to M. Cvengros, Ex. 39 [Doc. No. 98-4].)  These files included information that Northwest considers proprietary, such as call center statistics, customer levels, and goals.  (See Email from K. Swanson to F. Slocum and others, Ex. 40 [Doc. No. 98-5].)

On July 23, 2008, Defendants Slocum and Swanson met with Plaintiff and a union representative for a second Q & A session.  (7/23/08 Q & A, Ex. 42 [Doc. No. 98-5].)  Plaintiff admitted that she sent attendance, statistics, and family medical leave files to her personal email account, and that the information was considered proprietary.  (See id.)  Northwest terminated her employment the following day, on July 24, 2008.  (See Letter from K. Swanson to I. Miller, Ex. 44 [Doc. No. 98-5].)  Plaintiff's termination letter stated:

> This termination is a result of violations of the Rules of Conduct for Northwest Airlines Employees as determined as a result of a thorough Company investigation.  Specifically, the Company has determined that you have conducted business related to your second occupation while being paid to perform your job at Northwest Airlines.

(<u>Id.</u>)  It then listed several rules that Plaintiff had violated.  (<u>See</u> <u>id.</u>)

    **D.**    **This Lawsuit**

    Plaintiff's Complaint in this matter was filed on July 25, 2011 [Doc. No. 1].  Plaintiff asserts that Defendants interfered with her rights under the FMLA by:  (1) denying her Case No. 511 request for FMLA leave, (<u>see</u> Compl. ¶¶ 48, 50); and (2) denying her Case No. 602 request for FMLA leave and failing to obtain a third medical opinion pertaining to that request, (<u>see</u> <u>id.</u> ¶¶ 48, 52).  Plaintiff also asserts that Defendants retaliated against her for exercising her rights under the FMLA.  (<u>See</u> <u>id.</u> ¶¶ 54–55.)

    Defendants filed an Answer [Doc. No. 25] on October 21, 2011, and moved for summary judgment [Doc. No. 95] on February 15, 2013.  Defendants filed a brief [Doc. No. 97] and an affidavit [Doc. No. 98] in support of their Motion.  Pursuant to 28 U.S.C. § 636(b), the Motion was referred to Chief Magistrate Judge Arthur J. Boylan [Doc. No. 101], who granted Plaintiff's request for an extension of time to file her response.  (<u>See</u> Order dated Mar. 11, 2013 at 1 [Doc. No. 108].)  Chief Magistrate Judge Boylan ordered Plaintiff's response due on March 13 and Defendants' reply due on March 27.  (<u>See</u> <u>id.</u> at 2.)  Although Plaintiff failed to file a response, Defendants filed a timely reply brief [Doc. No. 109].

    Plaintiff provided no further communications prior to appearing at the April 10 hearing on Defendants' Motion.  At that time, Plaintiff submitted and filed her opposition to Defendants' Motion, which consisted of a memorandum [Doc. No. 113] and an affidavit

with attached exhibits [Doc. No. 112].  She also made brief arguments at the hearing[4].

Defendants, on the other hand, objected to Plaintiff's untimely submissions and asked that

they be stricken.  (See R & R at 13 [Doc. No. 115].)  Chief Magistrate Judge Boylan took

the Motion under advisement [Doc. No. 111].

       The magistrate judge issued his R & R on August 19, 2013.  As a preliminary

matter, he refused to consider Plaintiff's opposition papers because they were "grossly

untimely." (R & R at 13 [Doc. No. 115].)  Therefore, he considered Defendants' Motion to

be unopposed.  (Id.)  He noted, however, that "[e]ven if a motion for summary judgment is

unopposed, the district court must still determine that the moving party is entitled to

judgment as a matter of law."  (Id. at 14) (citing Interstate Power Co. v. Kansas City Power

& Light Co., 992 F.2d 804, 807 (8th Cir. 1993)).  As for Plaintiff's claims, Chief Magistrate

Judge Boylan found that:  (1) Plaintiff's FMLA entitlement claim failed to meet the statute

of limitations, and that even if the claim was timely, it would still fail as a matter of law for

lack of willfulness, (id. at 16–18); and (2) Plaintiff's FMLA retaliation claim fails as a matter

of law because she did not establish a prima facie case of retaliation or show that

Northwest's proffered reason for her discharge was pretext for discrimination, (id. at 23).

Therefore, the magistrate judge recommended that Defendants' Motion for Summary

Judgment be granted and that Plaintiff's Complaint be dismissed with prejudice.  (Id. at 24.)

       Plaintiff's objections to the R & R were due on September 3, 2013.  (See id. at 24.)

On that day, Plaintiff filed a motion to extend the deadline [Doc. No. 117].  The Court

---

[4]      While the official transcript was not requested and is not part of the docket, the
Court was able to obtain a rough copy.

granted the extension and ordered her objections due on September 11 [Doc. No. 121].

However, the order granting the extension was inadvertently mailed to the wrong address, so

the Court granted Plaintiff an additional extension until September 18 [Doc. No. 123].

On September 18, Plaintiff filed her Opposition to Magistrate Judge's Report and

Recommendation ("Objections") [Doc. No. 124]. Plaintiff's Objections consist of a 17-page

document that is typed in parts (both single-spaced and double-spaced) and handwritten in

others. It contains highlighting and many blank spaces where it appears that Plaintiff

intended to fill in more information, (see e.g., Pl.'s Obj. at 6–7 [Doc. No. 124]), and roughly

ten pages appear to be a direct reproduction of Defendants' Memorandum Supporting

Motion for Summary Judgment, (see id. at 6–16). In addition, Plaintiff's Objections refer

generally to the "attached emails + copy of report + recomm" for support. (Id. at 6.) The

first of Plaintiff's three attachments consists of 76 pages of emails and other "exhibits" [Doc.

No. 124-1]. The second and third attachments are the first and second halves of the R & R,

covered in highlighting, underlining, and handwritten notes (some illegible) in between the

lines of type and in the margins [Doc. Nos. 124-2, 124-3]. For example, in the left-hand

margin of the R & R's legal analysis section, Miller has handwritten "object" on every page

[Doc. No. 124-3 at 3-12].

Local Rule 72.2 governs review of magistrate judge rulings. Pursuant to that Rule, a

party objecting to a report and recommendation must make "specific objections." D. Minn.

LR 72.2(b)(1). For an unrepresented party, such as Plaintiff, the objections "must be either

typewritten and double-spaced or, if handwritten, printed legibly." D. Minn. LR

72.2(b)(2)(B). While pro se litigants' submissions and arguments are to be viewed liberally

and with leniency, pro se litigants are not excused from compliance with procedural rules.

See Brown v. Frey, 806 F.2d 801, 804 (8th Cir. 1986).  Plaintiff's Objections fail to comply

with the requirements of Local Rule 72.2 in several respects.  As discussed above, Plaintiff's

Objections are single-spaced and illegible in parts, and most of the objections lack

specificity.  However, the Court has thoroughly reviewed Plaintiff's Objections and, to the

best of its ability, has identified the following categories of objections:

> (1) a general objection to summary judgment as a means of legal resolution (Pl.'s Obj. at 2; 4 [Doc. No. 124]);

> (2) objection to the magistrate judge's decision to strike Plaintiff's summary judgment response memorandum and exhibits (Id. at 2; 4);

> (3) discovery-related objections (id. at 3);

> (4) objection to the finding that Northwest's failure to obtain a third medical opinion did not constitute willfulness with respect to Plaintiff's FMLA entitlement claim (id. at 1-2);

> (5) objection to the finding that Plaintiff failed to demonstrate a causal connection between her protected conduct and the adverse employment action. (id. at 2-5);

> (6) objection to the finding that Plaintiff failed to show that Northwest's proffered reason for her termination was pretext for retaliation (id. at 2); and

> (7) objection to the Court's consideration of/citation to the Affidavit of Britt Gilbertson. (id. at 4).

## II.    DISCUSSION

As noted, pursuant to Local Rule 72.2(b), "[a] party may file and serve specific

written objections to a magistrate judge's proposed findings and recommendations."  D.

Minn. LR 72.2(b)(1).  The district court will review de novo those portions of the R & R to

which an objection is made and "may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C);

accord D. Minn. LR 72.2(b)(3).  "Ordinarily, the district judge . . . relies on the record of

proceedings before the magistrate judge."  D. Minn. LR 72.2(b)(3).

As to the underlying summary judgment motions, summary judgment must be

granted, entitling the movant to judgment as a matter of law, if the movant shows that no

genuine dispute of material fact exists.  Fed. R. Civ. P. 56(a).  A fact is "material" if "it

might affect the outcome of the suit under the governing law," and a dispute is

"'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When ruling on a summary judgment motion, "[t]he [C]ourt views the evidence and

the inferences which may be reasonably drawn from the evidence in the light most favorable

to the nonmoving party."  Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir.

1996) (citation omitted).  However, "a party opposing a properly supported motion for

summary judgment may not rest upon mere allegations or denials of his pleading, but must

set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at

256.  In addition, summary judgment is appropriate when the nonmoving party fails "to

establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## A.      Entry of Summary Judgment as Opposed to Trial

Plaintiff asserts a general objection to the use of summary judgment as a means of

resolving legal disputes.  (Pl.'s Obj. at 2 [Doc. No. 124].)  Plaintiff notes that she

"specifically checked the 'Demand for Jury Trial' box on her Complaint.  (Id.)  She also

contends that at her deposition, defense counsel advised her that she would have a later opportunity to make her points.   (Id.)  Miller further contends that defense counsel refused her the opportunity to "cross-examine [her]self" at the close of her deposition.   (Id.)  Thus Miller argues, "If there is no trial, plaintiffs [sic] will not have the opportunity that [defense counsel] advised her she would have to address answers to questions that had multiple answers to clear up assumptions."  (Id.)

The Federal Rules allow for summary judgment as a means of early disposition of civil legal disputes.   See Fed. R. Civ. P. 56.   It is well-established that summary judgment is an appropriate method by which litigants may challenge some or all of the claims or defenses at issue.  Addressing the purpose of Rule 56, legal commentators have explained:

> The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved. Thus, parties need not wait until a case is fully tried but may seek a final adjudication of the action by a motion under Rule 56.
>
> ***
>
> Federal courts have verbalized the purpose of Rule 56 in a variety of ways. They have said that the rule is intended to prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases, and avoid unnecessary trials when no genuine issues of fact have been raised.

10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2712 (3d ed. 1998).  Only where no disputed issues of material fact are in dispute may courts enter judgment.  Defendants here properly moved for summary judgment and Plaintiff was given ample opportunity to respond.  Miller's objection to the use of summary judgment as a means of resolving her claims is without legal basis and is

overruled.

## B. Refusal to Consider Plaintiff's Memorandum and Exhibits in Opposition to Summary Judgment

The Court liberally construes Plaintiff's statements on page four of her objections as challenging the magistrate judge's refusal to consider Plaintiff's memorandum and exhibits submitted in response to Defendants' summary judgment motion.[5]  (Pl.'s Obj. at 4 [Doc. No. 124].)   As noted, Chief Magistrate Judge Boylan did not consider Plaintiff's submissions because they were grossly untimely.  (R & R at 13 [Doc. No. 115].)

Unlike the standard of review applicable to the merits of Defendants' summary judgment motion, the Court applies a different standard to its review of non-dispositive matters.  The Court's review of decisions of a magistrate judge on nondispositive matters is limited to determining whether the ruling is clearly erroneous or contrary to law.  D. Minn. L. R. 72.2(a).  This Court pays great deference to a magistrate judge's determinations.  See Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999) ("The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential.").  Plaintiff has failed to establish that Chief Magistrate Judge Boylan's refusal to consider her responsive summary judgment materials was either clearly

---

[5]      Plaintiff states:

Plaintiff's Untimely Summary Judgment Opposition -

Plaintiff, believing her Opposition was due March 11th (March 8th plus 3 days added on due to having the papers served by mail [Rule ], had contacted the court first on March 8th asking for a bigger word count.  The court had multiple options [sic]

(Pl.'s Obj. at 4 [Doc. No. 124].)

erroneous or contrary to law.

Plaintiff's submissions were filed nearly one month after the deadline.  Moreover,

Plaintiff had sought and received an extension on the original deadline.  (R & R at 12-13

[Doc. No. 115].)   In his ruling, the magistrate judge also noted Plaintiff's asserted reasons

for the delay: medical issues and transportation difficulties.  (Id. at 13.)   Ultimately,

Magistrate Judge Boylan concluded that Miller's untimely responsive submissions – served

on the day of the motions hearing – violated the applicable federal and local rules and

"prevented Defendants the opportunity to offer any reply to [Plaintiff's] opposition."  (Id.)

His decision was neither clearly erroneous nor contrary to law.

Moreover, the magistrate judge correctly observed that even though Defendants'

motion was technically unopposed, Defendants' motion was not necessarily a "winning

motion."  (Id.)  (citing Wiemann v. Engelhart, No. 07-CV-3929, 2009 WL 3128041, at *2

(D. Minn. July 24, 2009)).  Rather, the magistrate judge observed that the Court was still

required to determine if Defendants met the burden of establishing that they were entitled to

judgment as a matter of law.  (Id. at 14.)  Chief Magistrate Judge Boylan carefully analyzed

the record and Plaintiff's allegations before making his recommendation.  (Id. at 15-24.)

While this Court finds no error in Chief Magistrate Judge Boylan's refusal to

consider Plaintiff's untimely submissions, even if his decision constituted error, such error

would be harmless.  This Court has conducted a de novo review of Plaintiff's untimely

summary judgment opposition memorandum and exhibits and likewise concludes that

Defendants are entitled to judgment as a matter of law, for the reasons set forth in the R & R,

and as discussed herein.

### C.     Discovery Objections

Plaintiff asserts that she "requested material for Discovery purposes, and was denied," referring to discovery served on Northwest in a separate 2008 worker's compensation proceeding.  (Pl.'s Obj. at 3 [Doc. No. 124].)  To the extent that Plaintiff refers to discovery requested in an entirely different venue and forum, such discovery is outside this Court's jurisdiction.

Miller appears to argue that the worker's compensation action placed Defendants on notice of the need to retain complete documentation related to her Click 2 Coach records.  (Id.)  To the extent that Plaintiff asserts that Defendants failed to produce discovery in this litigation, Miller could have filed a motion to compel.   Miller is presumed familiar with this procedural device, as she filed a motion to compel in this matter in November 2012 [Doc. No. 79].   Assuming that Plaintiff requested this discovery in this litigation, Plaintiff failed to move to compel it.  In addition, she has failed to explain its import in her R & R objections.  Accordingly, Plaintiff's objections based on discovery are overruled.

### D.     Third Medical Opinion - Plaintiff's FMLA Entitlement Claim

The court construes Plaintiff's objections regarding a third medical opinion to assert that disputed issues of material fact exist regarding whether Defendants were obliged to obtain a third medical opinion regarding Plaintiff's Case No. 602 FMLA claim.  (Pl.'s Obj. at 1-2 [Doc. No. 124].)   As noted, this claim concerned chronic neck and back pain related to a 1996 injury.  (R & R at 3 [Doc. No. 115].)  Defendants sought a second opinion based on the belief that Plaintiff's supporting paperwork contained conflicting information.  (Id.)

In her Complaint, Plaintiff alleges that Northwest willfully and intentionally

interfered with her rights under the FMLA by denying Plaintiff's Case No. 602 request for FMLA leave and failing to obtain a third opinion regarding her request.  (Compl. ¶¶ 48; 52.) Defendants did not seek a third opinion regarding Case No. 602, nor did Plaintiff obtain one herself.  (Def.'s Mem. Supp. Mot. for Summ. J. at 14 [Doc. No. 97]) (citing Miller Dep. at 107-08.)

Chief Magistrate Judge Boylan recommended that summary judgment be granted on Plaintiff's FMLA entitlement claim for several reasons.  First, he properly found that Plaintiff's Case No. 602 claim, which accrued on July 3, 2008 (the date on which Defendants denied the claim), was barred by the FMLA's two-year statute of limitations, as Plaintiff did not file this suit until July 25, 2011.  (R & R at 15 [Doc. No. 115]) (citing 29 U.S.C. § 2617(c)(1)).[6]  The magistrate judge further determined that even if Plaintiff had established a "willful" violation, for which a three-year limitations period applies, her claim would still be untimely.

The FMLA provides that an action must be brought no later than two years after the date of the last event constituting the alleged violation for which the action is brought.  29 U.S.C. § 2617(c)(1).  In the case of willful violations, an action must be brought within three years of the date of the last event constituting the alleged violation for which the action is brought.  29 U.S.C. § 2617(c)(2).  As noted in the R & R, "An FMLA violation occurs when the employer improperly denies a request for leave."  Reed v. Lear Corp., 556 F.3d

---

[6]    Although the magistrate judge noted that Plaintiff filed her Complaint on July 24, 2011 (R & R at 16 [Doc. No. 115]), the docket reflects a filing date of July 25, 2011 (Compl. [Doc. No. 1].)  While this Court applies the July 25, 2011 date reflected in the docket, this difference does not affect the Court's review in any meaningful way.

674, 681 (8th Cir. 2009).   The magistrate judge properly determined that Plaintiff's claims were time-barred under the general limitation period as well as the limitation period applicable to willful violations.   Thus, regardless of whether a fact issue exists regarding whether Defendant was obliged to obtain a third opinion, Plaintiff's FMLA claim based on Case No. 602 is time-barred and must be dismissed.   The same is true for the other FMLA claim noted in the R & R, Case No. 511, which accrued on November 6, 2007.[7]

In her untimely summary judgment opposition memorandum, Plaintiff argues that the statute of limitations is tolled under the continuing violation doctrine, stating, "Defendants repeatedly interfered with plaintiffs [sic] statutory rights in trying to take FMLA leave, thus the "Continuing violation doctrine applies."  (Pl.'s Opp'n Mem. at 19 [Doc. No. 113].)  Plaintiff misunderstands the continuing violation doctrine.  Under the continuing violation doctrine, a plaintiff may seek "redress for unlawful discriminatory acts which occurred prior to the statute of limitations period if they are related to violative acts which occurred within the statutory period."  Smith v. Ashland, Inc., 179 F. Supp.2d 1065, 1069 (D. Minn. 2000), aff'd, 250 F.3d 1167 (8th Cir. 2001).  The doctrine is typically applied in cases of existing employees who challenge continuing discriminatory policies of promotion, demotion, assignment or other employment actions.  See Sondel v. Nw. Airlines, Inc., No. CV 3-92-381, 1993 WL 559028, at *3 (D. Minn. Jan. 14, 1993) (citations omitted).  The doctrine is inapplicable to separate, discrete acts, such as termination or failure to promote.  Rothstein v.

---

[7]     To the extent that Plaintiff objects to the Court's factual findings with respect to Case No. 511 (see Pl.'s Obj. at 2 [Doc. No. 125]), such objections are overruled as this claim is time-barred.  On November 6, 2007, Defendants denied Plaintiff's Case No. 511 request for leave (Compl. ¶ 21), and Plaintiff did not file this suit until well over three years later, on July 25, 2011.

Kemps, LLC, (R & R), 09-CV-3387 (JMR/SRN), 2010 WL 1995397, at *4 (D. Minn. Apr.

30, 2010) (citing Tademe v. Saint Cloud State Univ., 328 F.3d 982, 988 (8th Cir. 2003),

adopted, 2010 WL 1995394 (D. Minn. May 18, 2010).   Even assuming that the continuing

violation doctrine applies to claims under the FMLA, Miller does not point to any violative

act occurring within the limitations period.   The latest FMLA-related act occurred on July 3,

2008 when Northwest denied Miller's Case No. 602 request for FMLA leave.   As this Court

has held, this denial falls outside of the general two-year limitations period as well as the

three-year limitations period applicable to willful violations of the FMLA.   The continuing

violation doctrine, therefore, is inapplicable, and does not save Plaintiff's otherwise time-

barred FMLA entitlement claim.

In addition, the magistrate judge noted that even if Plaintiff's claim had been timely-

filed, it would still fail for lack of evidence of any willful interference.   (R & R at 17 [Doc.

No. 115].)   In her objections, Plaintiff presents several arguments in support of her position

that Defendants acted willfully.   First, Miller argues that the applicable union contract "very

pointedly and clearly addresses the fact of need of a 3rd opinion when the doctors differed."

(Pl.'s Obj. at 1 [Doc. No. 124].)   Although Plaintiff provides no citation to the record for this

contract, she nevertheless argues that the contract required Northwest to obtain a third

opinion when there was a difference of opinion between the first and second medical

opinions.   (Id. at 2.)   Plaintiff also points to the applicable federal regulations, 29 C.F.R. §

825.307(c), arguing that Defendants' failure to obtain a third opinion violated the

regulation's requirement of acting in "good faith."   Id.   In addition, Plaintiff implies that

Defendants improperly sought the second opinion from a regularly-contracted doctor, in

violation of 29 C.F.R. § 825.307(b).

Under the FMLA, employers are prohibited from interfering with, restraining, or denying an employee's exercise or attempted exercise of any right contained in the FMLA. 29 U.S.C. § 2615(a)(1).  In analyzing Plaintiff's entitlement claim on the merits, Chief Magistrate Judge Boylan applied the proper legal standard.  He correctly noted that interference includes "refusing to authorize FMLA leave."  (R & R at 17 [Doc. No. 115]) (citing Stallings v. Hussman Corp., 447 F.3d 1041, 1050 (8th Cir. 2006)).  In order to demonstrate willfulness, the plaintiff must show that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  (Id.) (citing Hanger v. Lake Cnty., 390 F.3d 579, 583-84 (8th Cir. 2004)).  Moreover, an employer's "general knowledge regarding a statute's potential applicability does not prove willfulness." (Id.)  The magistrate judge found that Defendants based the denial of Plaintiff's Case No. 602 leave request on the opinion of Dr. Helms, who found no objective findings to corroborate Plaintiff's complaints.  (Id.)  Chief Magistrate Judge Boylan further noted that even if Northwest's conclusion proved to be mistaken and Miller had submitted evidence showing that she was entitled to the benefit denied, "'where the employer tried to comport with the law and tenable reasoning undergirded its conduct,' no willfulness will be found." (Id. at 17) (quoting Bass v. Potter, 522 F.3d 1098, 1104 (10th Cir. 2008)).

In addition, whatever the language of the union contract may be, the applicable FMLA regulation makes clear that obtaining a third opinion is at the employer's discretion: "If the opinions of the employee's and the employer's designated health care providers differ, the employer may require the employee to obtain certification from a third health care

19

provider. . . ."  29 C.F.R. § 825.307 (1995) (emphasis added).  This language is consistent

with the policy set forth in the Defendants' FMLA Leave Policy, which states:

> Where the Company has reason to doubt the validity of the information
> provided on a medical certification, the Company may require that the
> employee or qualifying family member take part in a second opinion at the
> Company's expense.  The Company is permitted to designate the health care
> provider to furnish a second opinion.  Where the opinions of the employee's
> or qualifying family member's health care provider and the Company's
> designated health care provider differ, the Company <u>may</u> require a third
> medical opinion. . . .

(Northwest Airlines Family and Medical Leave Policy at 13, Ex. 9 [Doc. No. 98-2])

(emphasis added).  Moreover, as Chief Magistrate Judge Boylan properly noted, "[t]he

Eighth Circuit has held that decisions whether to obtain a second opinion, which statutory

language mirrors that of the language regarding third opinions, are permissive, not

mandatory, under the statute."  (R & R at 18 [Doc. No. 115]) (citing <u>Stekloff v. St. John's</u>

<u>Mercy Health Sys.</u>, 218 F.3d 858, 860 (8th Cir. 2000)).

     As to any "good faith" obligations, the language in the regulation concerning "good

faith" applies when an employer elects to obtain a third opinion.  29 C.F.R. § 825.307(c).  As

Defendants did not choose to obtain a third opinion here, nor did Plaintiff, the requirement to

attempt to reach a good faith agreement in the selection of a third opinion is inapplicable.

Finally, to the extent that Plaintiff contends that Defendants' second opinion was from a

provider with whom Northwest regularly contracted (Pl.'s Obj. at 1-2 [Doc. No. 124]), she

fails to provide a citation to evidence in the record supporting her contention.

     Finally, Plaintiff lodges a "cat's paw" objection: "Plaintiff references <u>Staub v. Proctor</u>

(Cats Paw) regarding lower managements [sic] influence on upper managements [sic]

decisions for FMLA approvals, Monitoring, alleged violations of rules of conduct." (Pl.'s Obj. at 2 [Doc. No. 124].) Plaintiff fails to indicate whether this objection relates to her entitlement claim or to her retaliation claim, or to both. In Staub v. Proctor Hosp., 131 S. Ct. 1186, 1190 (2011), the Supreme Court considered a "cat's paw" case – a case in which an employee sought to hold his employer liable for the animus of a supervisor who did not make the ultimate employment decision. The Supreme Court held that "if a supervisor performs an act motivated by an [unlawful] animus that is intended to cause an adverse employment action, and if that act is the proximate cause of the ultimate employment action, then the employer is liable." Id. at 1194. The cat's paw theory is inapplicable to Plaintiff's entitlement and retaliation claims, as Plaintiff has identified no FMLA-related animus, nor has she produced evidence showing a causal connection between any such animus and her termination.

Accordingly, the Court agrees with Chief Magistrate Judge Boylan that Defendants' failure to seek a third opinion was neither a knowing violation of the FMLA nor was it made with reckless disregard. Because Plaintiff's FMLA entitlement claim is time-barred under the statute of limitations and also fails on the merits, Plaintiff's objections are overruled and the Court adopts the magistrate judge's recommendation. Finding no disputes of material fact with respect to the FMLA entitlement claim, Defendants are entitled to summary judgment as a matter of law on this claim.

### E.    Plaintiff's FMLA Retaliation Claim

Chief Magistrate Judge Boylan also recommended that the Court grant summary judgment to Defendants on Plaintiff's claim for retaliation based on the Case No. 602

21

request for FMLA leave.  (R & R at 19-23 [Doc. No. 115].)  Plaintiff objects to the portion

of the R & R finding that she failed to demonstrate a causal connection between her

protected conduct and the adverse employment action.  (See Pl.'s Obj. at 2-5 [Doc. No.

124].)  In addition, she objects to the magistrate judge's finding of a lack of pretext –

specifically, that there was no evidence in the record indicating that Miller was treated

differently than similarly-situated employees.  (Id. at 2.)

The FMLA prohibits employers from discriminating against an employee for

asserting his or her rights under the FMLA.  Darby v. Bratch, 287 F.3d 673, 679 (8th Cir.

2002); 29 U.S.C. § 2615(a)(2)).  "To establish a prima facie case of FMLA retaliation, an

employee must show that she engaged in activity protected under the Act, that she suffered

an adverse employment action by the employer, and that a causal connection existed

between the employee's action and the adverse employment action."  Darby, 287 F.3d at

679.  In other words, an employee must prove that the employer was motivated by the

employee's exercise of his or her FMLA rights when it took the adverse action.  Pulczinski

v. Trinity Structural Towers, Inc., 691 F.3d 996, 1007 (8th Cir. 2012) (citing Hite v.

Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006)).

An employee can prove retaliation with direct evidence, or, lacking that, with indirect

evidence under the McDonnell Douglas burden-shifting analysis.  Hite, 446 F.3d at 865

(discussing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973)).  Miller does

not allege direct evidence of discrimination, as noted in the R & R, therefore Chief

Magistrate Judge Boylan properly applied the McDonnell-Douglas burden-shifting analysis.

(R & R at 19 [Doc. No. 115].)  To establish a prima facie case of retaliation under

McDonnell-Douglas, a plaintiff must show that (1) she engaged in activity protected under the FMLA; (2) she suffered a materially adverse employment action; and (3) a causal connection exists between the employee's protected activity and the adverse employment action. Pulczinkski, 691 F.3d at 1007. After the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. Phillips v. Mathews, 547 F.3d 905, 912 (8th Cir. 2008). If the employer does so, the employee-plaintiff must come forward with evidence that creates an issue of fact as to whether the asserted reason was pretext for discrimination. Id.

### 1.    Causation Element of Prima Facie Retaliation Claim

The magistrate judge properly found it undisputed that Miller suffered an adverse employment action when she was discharged. (R & R at 20 [Doc. No. 115].) However, even if Miller had presented evidence showing that she was entitled to FMLA leave based on Case No. 602, Chief Magistrate Judge Boylan found no causal link between Miller's request for FMLA leave and her discharge. (Id.) Plaintiff objects to Chief Magistrate Judge Boylan's finding that the record did not reflect sufficient evidence giving rise to an inference of retaliatory motive on which to establish a causal connection. (See Pl.'s Obj. at 2-5 [Doc. No. 124].)

The magistrate judge first considered whether a temporal connection sufficiently raised an inference of retaliatory motive. (R & R at 20-21 [Doc. No. 115]) (citing Hite, 446 F.3d at 866). Plaintiff submitted her Case No. 602 request for FMLA leave on April 29, 2008. (Miller's FMLA Leave Documents re: Case No. 602, Exs. 20-21 [Doc. Nos. 98-1 & 98-2].) Her request was denied on July 3, 2008, and she was discharged on July 24, 2008.

(Letter from K. Swanson to I. Miller, Ex. 34 [Doc. No. 98-3]; Letter from K. Swanson to I. Miller, Ex. 44 [Doc. No. 98-5].)   As noted by the magistrate judge, generally, temporal proximity alone is insufficient to raise an inference of retaliatory motive, and the magistrate judge found that it did not establish an inference of retaliatory motive here.  (R & R at 21.) "A 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge." Kipp v. Missouri Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002).  This Court concurs with the magistrate judge.

Along with her objections, Plaintiff submits email exhibits apparently to support the element of causation.  In a March 26, 2008 email, Cargo Accounting Manager Betsy Sagnes remarked to Plaintiff's supervisor Pamela Hegstrom, "Thanks for all you do to keep the place running and for dealing with 'stuff' like Idonna."  (Email of 3/26/08 from B. Sagnes to P. Hegstrom, Ex. 1 to Pl.'s Obj. [Doc. No. 124-1].)  The following day, Hegstrom sent the following message to Cargo Call Center Manager Kate Swanson: "Just an FYI that I swung in to Betsy's.  She is fine with everything going on and mentioned again that it is too bad we can't 'manage Idonna out' of the office."  (Email of 3/27/08 from P. Hegstrom to K. Swanson, Ex. 1 to Pl.'s Obj. [Doc. No. 124-1].)  These emails, however, lack any reference to Plaintiff's FMLA claims in general, or to the specific FMLA claim on which she bases her retaliation cause of action – Case No. 602.   While these emails themselves provide no context for the underlying subject matter, FMLA-related or otherwise, the record reflects that in the spring of 2008, Hegstrom and other management were concerned about Plaintiff's use of company property in connection with her work for Stampin' Up. (Hegstrom Dep. at 129; 134, Ex. 2[Doc. No. 98-1].)   Most importantly, however, these

March emails pre-date Plaintiff's April 29 submission of her Case No. 602 FMLA request. Therefore, as a practical matter, they cannot support a causal link between Plaintiff's FMLA request and her subsequent termination. Accordingly, the Court finds that this evidence does not demonstrate temporal proximity nor does it raise an inference of retaliatory motive or create a disputed issue of fact. Any causal connection remains lacking.

Plaintiff also points to a series of emails sent on July 16, 2008 among her immediate managers. In one, Pamela Hegstrom states to Kate Swanson and Chris Talbert, "If you need me I'll be in the training room with the door shut working on Operation Idonna's stuff." (Email of 7/16/08, Ex. 1 to Pl.'s Obj. [Doc. No. 124-1].) Another series of exchanges between managers that same day addresses whether Plaintiff had internet access and, if so, whether she had received Northwest's internet and computer usage policy. (Email of 7/16/08 from K. Swanson to F. Slocum, Ex. 1 to Pl.'s Obj. [Doc. No. 124-1].) These emails do not address Plaintiff's FMLA leave in general nor do they address her Case No. 602 FMLA request. The Court finds that these emails also do not raise an inference of retaliatory motive, nor do they create a disputed issue of material fact.

### 2.    Pretext

In addition to finding that Plaintiff fails to establish the causal element of her prima facie FMLA retaliation claim, the magistrate judge also found that Plaintiff failed to meet her burden under the McDonnell Douglas burden-shifting analysis of showing that Northwest's proffered reason for her termination was pretextual. (R & R at 22-23 [Doc. No. 115].) The Court agrees with the magistrate judge that Northwest articulated a legitimate non-discriminatory rationale for Miller's termination: Miller's violation of several company

policies.  (Id. at 21-22.)  Defendants offered evidence that, beginning in 2007, Plaintiff used

its company property while on company time to conduct Stampin' Up business.  (Hegstrom

Dep. at 95; 128-29, Ex. 2 [Doc. No. 98-1]; Talbert Dep. at 150-51, Ex. 3 [Doc. No. 98-1];

Email from P. Hegstrom to K. Swanson, Ex. 15 [Doc. No. 98-2]; Email from P. Hegstrom to

I. Miller, Ex. 17 [Doc. No. 98-2]; Email from C. Talbert to F. Slocum & B. Sagnes, Ex. 29

[Doc. No. 98-3].)   In addition, Plaintiff used her travel benefits to fly to Michigan on a trip

during which Northwest believed that she also held Stampin' Up camps.  (Email from C.

Talbert to F. Slocum & B. Sagnes, Ex. 29 [Doc. No. 98-3].)  Defendants Hegstrom and

Talbert reminded Plaintiff several times in 2007 and 2008 that conducting non-work-related

activities violated company policy.  (Talbert Dep. at 97-99, 152, Ex. 3 [Doc. No. 98-1];

Email from P. Hegstrom to K. Swanson, Ex. 15 [Doc. No. 98-2];  Email from P. Hegstrom

to I. Miller, Ex. 17 [Doc. No. 98-2]; Email from B. Sagnes to I. Miller, Ex. 28 [Doc. No. 98-

3]; Email from C. Talbert to F. Slocum & B. Sagnes, Ex. 29 [Doc. No. 98-3].)   Northwest's

notification of termination identified this conduct as being in violation of the company's

conduct code, providing the basis for Plaintiff's termination.  (Letter from K. Swanson to I.

Miller, Ex. 44 [Doc. No. 98-5].)

Plaintiff objects to many of the Defendants' facts underpinning the proffered non-

discriminatory reason for her termination.  Specifically, Plaintiff raises issues about the color

of printed posters, whether monitoring of calls were truly random, and whether she was

adequately coached regarding her non-work-related activities.  (Pl.'s Obj. at 4-5 [Doc. No.

124].)   The Eighth Circuit has held, however, that "[a] proffered legitimate, non-

discriminatory reason for termination need not, in the end, be correct if the employer

honestly believed the asserted grounds at the time of termination." Twymon v. Wells Fargo & Co., 462 F.3d 925, 935 (8th Cir. 2006).   Miller "does not assert that [Northwest] did not honestly believe she was accountable for violations of the [company's] policy when they fired her for those violations." Id.  (citing Mershon v. St. Louis Univ., 442 F.3d 1069, 1074-75 (8th Cir. 2006) (finding that even if underlying reason for termination was false, the plaintiff did not rebut the proffered non-discriminatory reason from which to conclude that the defendant knew or suspected its falsity)).  Accordingly, even if Northwest was incorrect in its assumptions about Miller's non-work-related activities, Plaintiff has presented no evidence demonstrating that Northwest knew or suspected the reason for Miller's termination was false at the time of her termination.

Plaintiff has also failed to demonstrate pretext with respect to similarly-situated employees.  While a plaintiff may show that the employer's asserted reasons for termination are pretextual by establishing that similarly situated employees were treated differently, Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 230 (8th Cir. 2011), the plaintiff bears the burden of identifying similarly situated individuals and showing by a preponderance of the evidence that they were similar to the plaintiff in all relevant aspects.  E.E.O.C. v. Kohler Co., 335 F.3d 766, 776 (8th Cir. 2003).  The employees used for comparison "must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. (citation omitted). Furthermore, to be considered probative of pretext, the comparable employees' misconduct must be of "'comparable seriousness.'" Id. (citing Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988)).  The test to determine whether employees are similarly-situated is

therefore a "rigorous" one.  Id. (citing Harvey v. Anheuser–Busch, Inc., 38 F.3d 968, 972 (8th Cir.1994)).

In her objections, Plaintiff argues that "other employees" were soliciting customers for similar businesses, such as "Tastefully Simple," while working at Northwest, and were not terminated. (Pl.'s Obj. at 2 [Doc. No. 124].)   Plaintiff's untimely-filed response to Defendants' summary judgment motion also identifies four employees by first and last name, or first name only, who allegedly solicited sales from co-workers.  (Pl.'s Opp'n Mem. at 18 [Doc. No. 113].)   Similarly, an exhibit to her untimely summary judgment opposition memorandum includes examples of mass emails circulated between Northwest staff regarding various types of fund-raiser sales, jewelry catalog sales, and general interest information/internet humor.  (Misc. Emails, Ex. 34 to Pl.'s Opp'n Mem. [Doc. No. 112-16].) While the implication appears to be that other employees sent non-work-related emails or solicited each other for various non-work-related sales without consequence to their jobs, Plaintiff has not shown that the employees in question worked for the same supervisor or engaged in the same type of conduct.  See  Kohler Co., 335 F.3d at 776.  Accordingly, Plaintiff has failed to demonstrate that she was treated differently than similarly-situated employees.

In addition, to the extent that Plaintiff relies on the March and July 2008 emails sent between Northwest managers as evidence of pretext (see Pl.'s Opp'n Mem. at 5 [Doc. No. 113]), or the argument that Defendants decided to terminate her on July 22, in advance of the second Q & A the following day (Pl's Obj. at 3 [Doc. No. 124]), such evidence fails to establish pretext.  As discussed with respect to causation, the emails do not address

Plaintiff's FMLA claims  in general, or her Claim No. 602 in particular.   Moreover, none of

the emails demonstrates that Northwest's proffered reason for Plaintiff's termination was

false or suspected of being false.   See Twymon, 462 F.3d at 935.

With respect to Plaintiff's argument regarding the timing of the decision to terminate

her (Pl.'s Obj. at 3 [Doc. No. 124]), to the extent that this objection relates to pretext, it fails

to establish pretext or to even create a question of fact as to pretext.   While Plaintiff was

terminated on July 23, the record demonstrates that her termination was directly related to

her actions in conducting outside business at while at work.  (See Letter from K. Swanson to

I. Miller, Ex. 44 [Doc. No. 98-5].)   The fact that Defendants decided to terminate Plaintiff

one day before actually terminating her has no bearing on the FMLA claim on which her

retaliation claim is based.

For all of the foregoing reasons, the Court finds that there are no material issues of

disputed fact with respect to Plaintiff's claim for FMLA retaliation.   Accordingly,

Defendants' motion for summary judgment is granted as to this claim.

### F.        Reliance on the Affidavit of Britt Gilbertson.

Plaintiff also objects to the Court's reliance on the Affidavit of Britt Gilbertson.

(Pl.'s Obj. at 4 [Doc. No. 124].)  Plaintiff states, "Object to the portions of affidavit of Britt

Gilbertson, as she has no personal knowledge of the actual events in question, so she can not

[sic] truthfully testify to the events in question."  (Id.)   Plaintiff misunderstands the purpose

of Ms. Gilbertson's affidavit.  The Gilbertson Affidavit [Doc. No. 98] is an attorney's

supporting affidavit that merely identifies the exhibits filed in support of Defendants' Motion

for Summary Judgment.  It is not an affidavit that purports to attest to facts based on

personal knowledge.  The filing of a supporting affidavit regarding exhibits to a legal

memorandum is standard legal practice and is required under the Local Rules of this Court.

Local Rule 7.1(l) provides: "Exhibits must be accompanied by an index – either in the form

of a supporting affidavit or of a separate title page – that identifies the exhibits."   Moreover,

Plaintiff herself filed a supporting affidavit in connection with her belatedly-filed summary

judgment response memorandum.  (Miller Aff. [Doc. No. 112].)  Plaintiff's objection to the

Court's reliance on the Gilbertson Affidavit is without merit.

    In conclusion, the Court finds that there are no material issues of disputed fact with

respect to Plaintiff's claims.  The Court adopts the recommendation of the magistrate judge.

Accordingly, Defendants' motion for summary judgment is granted.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Plaintiff's Opposition [Doc. No. 124] to the Chief Magistrate Judge's August 19, 2013, Report and Recommendation [Doc. No. 115] is **OVERRULED**;

2.    The Chief Magistrate Judge Report and Recommendation [Doc. No. 115] is **ADOPTED**;

3.    Defendants' Motion for Summary Judgment [Doc. No. 95] is **GRANTED**; and

4.    This action is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  September 27, 2013                 s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge